No. 21-1292

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIRST CIRCUIT

———————————

MANI BATCHU,
PETITIONER-APPELLANT

v.

UNITED STATES OF AMERICA,
RESPONDENT-APPELLEE

———————————

ON APPEAL FROM AN ORDER DENYING A MOTION TO VACATE,
SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. §2255,
ENTERED IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

———————————

BRIEF FOR THE UNITED STATES

———————————

RACHAEL S. ROLLINS
UNITED STATES ATTORNEY

MARK T. QUINLIVAN
ASSISTANT U.S. ATTORNEY
JOHN JOSEPH MOAKLEY U.S. COURTHOUSE
1 COURTHOUSE WAY
SUITE 9200
BOSTON, MASSACHUSETTS 02210
(617) 748-3606

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................. iii

STATEMENT OF JURISDICTION ....................................................... 1

STATEMENT OF THE ISSUES ........................................................... 1

STATEMENT OF THE CASE ............................................................... 2

    A.    Procedural Synopsis ........................................................... 2

    B.    The Offenses of Conviction ................................................ 4

    C.    Attorney Foley Enters His Appearance for Batchu and Files
           Motion to Suppress ............................................................ 8

    D.    Batchu's Guilty Plea .......................................................... 9

    E.    Sentencing ......................................................................... 9

           1.    The Presentence Report ............................................ 9

           2.    The motion to continue the sentencing hearing and motion
                for reconsideration following its denial ..................... 10

           3.    Attorney Foley's Sentencing Memorandum ............... 12

           4.    The sentencing hearing. ............................................ 13

    F.    Batchu's Direct Appeal ...................................................... 17

    G.    Proceedings on Batchu's 28 U.S.C. §2255 Motion ............ 18

           1.    Batchu's §2255 motion ............................................. 18

           2.    Attorney Foley's verified affidavit ........................... 19

           3.    Batchu's "hearing brief" ........................................... 20

           4.    The evidentiary hearing ............................................ 22

           5.    The district court denies Batchu's §2255 motion ...... 23

6.    Batchu's motions for a certificate of appealability and for reconsideration ...........................................................26

7.    The district court denies reconsideration but grants a certificate of appealability........................................................27

SUMMARY OF ARGUENT....................................................................28

ARGUMENT ...........................................................................................30

I.    THE DISTRICT COURT CORRECTLY DETERMINED THAT BATCHU FAILED TO SHOW THAT HIS COUNSEL HAD AN ACTUAL CONFLICT OF INTEREST. ........................................30

A.    Standard of Review ...........................................................30

B.    Batchu is Not Entitled to Relief on This Claim ..................30

II.    BATCHU'S CLAIM THAT THERE WAS A COMPLETE DENIAL OF COUNSEL AT THE SENTENCING HEARING IS UNREVIEWABLE BECAUSE IT IS NOT COVERED BY THE CERTIFICATE OF APPEALABILITY, AND LACKS MERIT IN ANY EVENT....................................................................................34

A.    This Claim is Unreviewable................................................34

B.    Regardless, Batchu is Not Entitled to Relief on This Claim...............35

III.    THE DISTRICT COURT CORRECTLY DETERMINED THAT BATCHU FAILED TO SHOW THAT HIS COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT THE SENTENCING HEARING. .......39

A.    Standard of Review ...........................................................39

B.    Batchu is Not Entitled to Relief on This Claim ..................39

CONCLUSION........................................................................................42

CERTIFICATE OF COMPLIANCE.......................................................43

CERTIFICATE OF SERVICE ...............................................................44

## TABLE OF AUTHORITIES

### CASES

*Batchu v. United States*,
    571 U.S. 1034 (2013)......................................................................................3

*Bell v. Cone*,
    535 U.S. 685 (2002)......................................................................................35

*Butterworth v. United States*,
    775 F.3d 459 (1st Cir. 2015)........................................................................34

*Cuyler v. Sullivan*,
    446 U.S. 335 (1980)......................................................................................31

*Familia-Consoro v. United States*,
    160 F.3d 761 (1st Cir. 1998)........................................................................31

*Fusi v. O'Brien*,
    621 F.3d 1 (1st Cir. 2010)....................................................................... 35-36

*Mickens v. Taylor*,
    535 U.S. 162 (2002)......................................................................................31

*Miranda v. Arizona*,
    384 U.S. 436 (1966).......................................................................................6

*Morales-Rivera v. United States*,
    184 F.3d 109 (1st Cir. 1999).........................................................................1

*Peralta v. United States*,
    597 F.3d 74 (1st Cir. 2010)..........................................................................34

*Strickland v. Washington*,
    466 U.S. 668 (1984)..................................................................... 26, 29, 30, 39

*United States v. Batchu*,
    523 F. Supp. 3d 115 (D. Mass. 2021)....................................................... 3, 23

*United States v. Batchu*,
    724 F.3d 1 (1st Cir. 2013)................................................................ 3, 17, 40, 41

*United States v. Cronic*,
    466 U.S. 648 (1984).......................................................... 21, 25, 35, 36

*United States v. Fernandez-Cabrera*,
    625 F.3d 48 (1st Cir. 2010)............................................................4

*United States v. Shipley*,
    560 F. Supp. 2d 739 (S.D. Iowa 2008)............................................12

*United States v. Simon*,
    12 F.4th 1 (1st Cir. 2021),
    *cert. denied*, 142 S. Ct. 2811 (2012), 142 S. Ct. 2812 (2022)............................30

*United States v. Soldevila-Lopez*,
    17 F.3d 480 (1st Cir. 1994)............................................................31

*United States v. Theodore*,
    468 F.3d 52 (1st Cir. 2006).......................................................... 35, 38

*Watson v. United States*,
    37 F.4th 22 (1st Cir. 2022)......................................................... 30, 34, 39, 41

## STATUTES

18 U.S.C. §2251(a) .............................................................................2

18 U.S.C. §2252(a)(4)(B) ..................................................................2

18 U.S.C. §2422(b) .............................................................................2

18 U.S.C. §2423(a) .............................................................................2

18 U.S.C. §2423(b) .............................................................................2

18 U.S.C. §3553(a) ................................................................... 12, 13, 37

28 U.S.C. §1291 .................................................................................1

28 U.S.C. §2253(a) .............................................................................1

28 U.S.C. §2253(c) ...........................................................................34

28 U.S.C. §2253(c)(3) ......................................................................35

28 U.S.C. §2255 .............................................................................................. *passim*

## <u>FEDERAL RULES OF PROCEDURE</u>

Fed. R. Civ. P. 52 ....................................................................................26

## <u>SENTENCING GUIDELINES</u>

USSG §1B1.3(a)(1)(A) .................................................................................9

USSG §2G1.3(d)(1) .....................................................................................9

USSG §2G2.1(d)(1) .....................................................................................9

USSG §3C1.1 .............................................................................................10

## STATEMENT OF JURISDICTION

Mani Batchu appeals from an order denying his motion under 28 U.S.C. §2255 to vacate, set aside, or correct his sentence.   On March 1, 2021, the district court (Mastroianni, J.) denied the motion.   [D.283; G.Add.1-10].[1]   On April 1, 2021, the district court denied Batchu's motion for reconsideration but granted his motion for a certificate of appealability.   [D.288; G.Add.11-12].   On April 8, 2021, Batchu timely noticed an appeal by placing the notice in the prison mail system.   [D.290; G.App.481-482; *see Morales-Rivera v. United States*, 184 F.3d 109, 109-10 (1st Cir. 1999) (prison mailbox rule controls the date of an incarcerated individual's filings under §2255)].   This Court has jurisdiction to review the denial of Batchu's §225 motion under 28 U.S.C. §2253(a) and 28 U.S.C. §1291.

## STATEMENT OF THE ISSUES

1.   The district court correctly determined that Batchu failed to show that his counsel had an actual conflict of interest.

2.   Batchu's claim that there was a complete denial of counsel at the sentencing hearing is unreviewable because it is not covered by the certificate of appealability, and lacks merit in any event.

---

[1] Citations are as follows:   Docket entries are cited as "[D.__]."   The government's addendum is cited as "[G.Add.__], and the government's supplemental appendix is cited as "[G.App.__]."   The Presentence Report is cited as "[PSR ¶__].

1

3.    The district court correctly determined that Batchu failed to show that his counsel provided ineffective assistance at the sentencing hearing.

## STATEMENT OF THE CASE

### A.    Procedural Synopsis

On April 1, 2010, a federal grand jury returned an indictment charging Batchu with transportation of a minor to engage in sexual activity, in violation of 18 U.S.C. §2423(a) (Count One); three counts of interstate travel for the purpose of engaging in illicit sexual activity with a minor, in violation of 18 U.S.C. §2423(b) (Counts Two through Four); use of a facility of interstate commerce to entice a minor to engage in sexual activity, in violation of 18 U.S.C. §2422(b) (Count Five); two counts of sexual exploitation of a minor, in violation of 18 U.S.C. §2251(a) (Counts Six and Seven); and possession of material involving sexual exploitation of a minor, in violation of 18 U.S.C. §2252(a)(4)(B) (Count Eight).   [D.22; G.App.31-44].   On March 31, 2011, the district court originally assigned the case (Ponsor, J.) granted the government's motion to dismiss Counts Seven and Eight of the indictment in an electronic order.   [G.App.15].

On May 9, 2011, Batchu pled guilty to Counts One through Five of the indictment pursuant to a written plea agreement with the government, and the government agreed to dismiss Count Six of the indictment following the imposition of sentence at the sentencing hearing.   [G.App.75-136].   On November 18, 2011,

2

Judge Ponsor sentenced Batchu to concurrent terms of imprisonment of 365 months on Counts One through Five and granted the government's motion to dismiss Count Six of the indictment.   [G.App.232-243].   The Judgment in a Criminal Case entered on November 30, 2011.   [D.91; G.App.251-257].

On July 18, 2013, this Court affirmed Batchu's sentence on direct appeal.   *See United States v. Batchu*, 724 F.3d 1, 6-14 (1st Cir. 2013).   On November 18, 2013, the Supreme Court denied Batchu's petition for a writ of certiorari.   *See Batchu v. United States*, 571 U.S. 1034 (2013).

On November 18, 2014, Batchu timely moved to vacate his sentence under 28 U.S.C. §2255 by placing the motion in the prison mailing system.   [D.126; G.App.255-267].   On July 19, 2017, the case was reassigned from Judge Ponsor to Judge Mastroianni.   [D.202].   On March 1, 2021, the district court denied Batchu's §2255 motion in a published *Memorandum and Order Regarding Defendant-Petitioner's Motion to Vacate Under 28 U.S.C. §2255.*   [D.283; G.Add.1-10; *see United States v. Batchu*, 523 F. Supp. 3d 115 (D. Mass. 2021)].

On March 29, 2011, Batchu moved for a certificate of appealability as to two claims raised in his §2255 motion.   [D.286; G.App.475].   The next day, he moved for reconsideration of the denial of his §2255 motion.   [D.287; G.App.477-479].   On April 1, 2021, the district court denied Batchu's motion for reconsideration but granted his motion for a certificate of appealability.   [D.288; G.Add.11-12].

### B.    The Offenses of Conviction.[2]

In August 2008, Batchu, a 29-year-old licensed physician and second-year resident in psychiatry at the University of Illinois in Chicago with an interest in adolescent psychiatry, met a 15-year-old female, "Minor A," while online using an Internet application called Speed Date.   [PSR ¶¶8-11; G.App.103-104].   Over the next several months, Batchu – who was using the alias "Mark Taylor" and falsely claimed to be 17 years old and later to be 21 years old – groomed Minor A for sexual exploitation through a lengthy series of e-mails, instant messages, text messages, phone calls, and gifts and cards that he sent through the mail.   [PSR ¶¶8, 11-12; G.App.104, 106-108].   Although Minor A initially claimed to be 18 years old, she later informed Batchu that her real age was 15, but Batchu responded that he did not care about her real age because he loved her.   [PSR ¶11; G.App.107].

Then, having successfully groomed her over a series of months, Batchu proceeded to commit a number of statutory rapes of Minor A.   [PSR ¶8; G.App.104-106].   In early May 2009, Batchu flew to Connecticut, rented a car and a hotel room, drove to Minor A's home in western Massachusetts and picked her up, and drove back to the hotel room in Connecticut where they had sex.   [PSR ¶16; G.App.104].

---

[2] Because Batchu was sentenced following a guilty plea, the relevant facts are taken from the change-of-plea colloquy and the PSR.   *See United States v. Fernandez-Cabrera*, 625 F.3d 48, 50 (1st Cir. 2010).

When Minor A's mother found out about this encounter, she brought Minor A to the local police station to report a complaint about Minor A's contact with "Mark Taylor," which Minor A subsequently conveyed to Batchu.   [PSR ¶17; G.App.108]. Batchu told Minor A he did not care and that nothing would come between them and arranged to see her over the Memorial Day weekend, and also promised to bring her a new cell phone so that Minor A could surreptitiously contact him.   [PSR ¶17; G.App.108-109].

Batchu thereafter drove from his home in Chicago to Minor A's town in western Massachusetts to see her over the Memorial Day weekend, and when they met at a conservation area on May 23, 2009, Batchu kissed her, talked about having sex with her, and unbuttoned her shorts and placed his fingers inside her vagina. [PSR ¶19; G.App.105, 109].   They were interrupted by Minor A's older brother, and Batchu sped away in his Lexus and returned to Chicago.   [PSR ¶19; G.App.109].

On May 26, 2009, a Massachusetts court issued a permanent restraining order ordering Batchu to have no contact with Minor A for one year, and the order was served on Batchu on May 29, 2009.   [PSR ¶21; G.App.110].   Batchu accepted service and asked how long the order would be in effect.   [PSR ¶21; G.App.110].

On June 9, 2009, Batchu was arrested in Chicago by detectives with the Chicago Police Department pursuant to an arrest warrant issued by a Massachusetts state court.   [PSR ¶24; App.110].   Batchu was advised of and waived his rights

under *Miranda v. Arizona*, 384 U.S. 436 (1966), both on that date and during a follow-up interview the next day, and he admitted, among other things, that he had used the alias "Mark Taylor" with Minor A, that he never had told Minor A his real name or age, that he had twice traveled to meet Minor A, and that he had sex with her the first time they met in a hotel in Connecticut.  [PSR ¶25; G.App.110-111]. Batchu also consented to a search of a MacBook computer that he said he used. [PSR ¶24].

On June 24, 2009, Batchu was ordered released on bail during an initial appearance in a Massachusetts court with the explicit conditions that he refrain from any abuse of, stay away from, and have no contact with Minor A. [PSR ¶28; G.App.111].   Batchu appeared the next day in Connecticut state court, where he had been charged with three counts of sexual assault in the second degree, and was ordered released on a cash bond with the condition that he have no contact with any child under the age of 18, including Minor A.   [PSR ¶29; G.App.111-112].

Batchu proceeded to violate these orders almost immediately, as he communicated with Minor A repeatedly over the Internet and by telephone.  [PSR ¶41; G.App.112].   On July 22, 2009, Minor A's parents took her family to Vero Beach, Florida, for a vacation, in part to seek a respite from the ordeal caused by Batchu's repeated contacts with Minor A.  [PSR ¶42; G.App.113].   Unbeknownst to her family, Minor A told Batchu about the trip, and Batchu flew to Fort Lauderdale,

6

rented a car and a hotel room, and drove to Minor A's hotel the next day where he met her in a parking lot across the street and had sex with her. [PSR ¶¶42-43; G.App.105, 113-114]. Batchu also continued to see Minor A without her family's knowledge over the next two days, including bringing her back to his hotel room and having sex with her. [PSR ¶43; G.App.105, 114]. Before leaving, Batchu told Minor A that she could refuse to testify against him and that if anyone asked, she should deny having sex with him. [PSR ¶43; G.App.114].

Following this encounter in Florida, Batchu continued to remain in contact with Minor A, and planned to visit her once again so that he could have sex with her. [PSR ¶46; G.App.115]. After an appearance in Connecticut state court on August 4, 2009, Batchu rented a car and drove to Minor A's town in western Massachusetts and met Minor A at the food court of a local mall, where Minor A was seeing a movie with her sister. [PSR ¶47; G.App.115]. After Minor A excused herself to use the restroom, she met up with Batchu and he took her to a department store where they engaged in sexual intercourse and oral sex with her inside a fitting room. [PSR ¶¶47, 52; G.App.105-106, 115-116]. They then returned to the food court, where they encountered Minor A's family, who had called the police after Minor A's sister had become concerned that she had not returned to the movie. [PSR ¶47; G.App.116]. Batchu was arrested for violating the permanent restraining order. [PSR ¶47].

7

A forensic examination of the computer seized when Batchu was first arrested revealed the following, among other items:

- a video in which Batchu can be heard communicating with an unknown adolescent female (Minor B), in which Minor B is displaying her genitals and masturbating while Batchu can be heard moaning.

- a video in which Batchu can be heard communicating with another unknown adolescent female (Minor C), in which Minor C is dressed only in her bra and panties and is displaying her pubic area while Batchu can be heard speaking to her in a flirtatious, sexual manner.

- hundreds of image files depicting minor females, mostly adolescents, engaged in sexually explicit conduct such as displaying their genitals or masturbating.

[PSR ¶¶34-37].

### C.    Attorney Foley Enters His Appearance for Batchu and Files Motions to Suppress.

On April 22, 2010, following Batchu's indictment Richard N. Foley, Esq. entered an appearance on behalf of Batchu.   [D.27].   Attorney Foley thereafter filed a pair of motions to suppress, the first of which sought suppression of statements Batchu made to law enforcement officials when he was arrested on June 9, 2009, and the second of which sought suppression of property seized from his residence later that same day.   [D.54, 56].   An evidentiary hearing on the motions to suppress took place on February 24 and 25, 2011.   [D.69, 70].

**D.** __Batchu's Guilty Plea__.

On March 28, 2011, the parties informed the district court that Batchu had agreed to plead guilty pursuant to a written plea agreement with the government. [D.77].   On May 9, 2011, Batchu pled guilty to Counts One through Five of the indictment pursuant to a written plea agreement with the government, and the government agreed to dismiss Count Six of the indictment following the imposition of sentence at the sentencing hearing.   [G.App.117, 132-133].   The plea agreement contained an appeal waiver in which Batchu waived his right to appeal or collaterally challenge any sentence of imprisonment of 293 months or less.   [D.79; G.App.52].

**E.** __Sentencing__.

**1.    The Presentence Report.**

The Probation Office determined the combined total offense level ("TOL") to be 41 by calculating three groups: Group I, which related to Counts One through Five of the indictment involving Minor A; Group II, which related to relevant conduct involving Minor B; and Group III, which related to relevant conduct involving Minor C.   [PSR ¶¶63-97].   In making this determination, the Probation Office explained that, because both Minors B and C were under the age of 18, Batchu's actions with respect to them constituted relevant conduct under USSG §1B1.3(a)(1)(A), which required separate grouping under USSG §§2G1.3(d)(1) and 2G2.1(d)(1).   [PSR

9

¶¶60, 65-66].    The Probation Office also found that Batchu merited a two-level enhancement for obstruction of justice under USSG §3C1.1.    [PSR ¶¶61, 73, 80, 87]. Batchu's Total Offense Level of 41, when combined with his Criminal History Category of I ("CHC") of I, yielded an advisory Guidelines sentencing range ("GSR") of 324 to 405 months.    [PSR ¶135].

Attorney Foley filed multiple objections to the PSR on Batchu's behalf, including asserting that no additional units should be assessed because the unknown two other females (Minors B and C) were not minors and were not coerced into anything, and that the two-level enhancement for obstruction of justice was not warranted because he had not submitted any untruths and had never counseled Minor A to lie.    [PSR, Def. Objections ##1-9].

### 2. The motion to continue the sentencing hearing and motion for reconsideration following its denial.

The sentencing hearing was originally scheduled for October 5, 2011, and was continued on the government's assented-to motion to November 18, 2011.    [D.81]. On November 1, 2011, Attorney Foley moved to continue the sentencing hearing on the ground that an evaluation by Dr. David Medoff, a licensed psychiatrist, had been arranged to aid in deciding the appropriate sentence, that Dr. Medoff's services were expensive, that Attorney Foley had just been able to secure the requisite fees, and that Dr. Medoff had advised that he needed 45 days to conduct the evaluation:    [D.84;

G.App.139-140].   Attorney Foley represented that the government did not object to the motion to continue on the grounds stated, but did object on the basis of the minor victim's desire for a prompt resolution of this matter.   [G.App.139-140].

On November 7, 2011, Judge Ponsor denied the motion in an electronic order that stated: "Defendant has waited too long to arrange for the evaluation." [G.App.16].

On November 13, 2011, Attorney Foley moved to reconsider on the following grounds:

- Attorney Foley had discussed an evaluation with Dr. Medoff beginning in June 2011, but his services were expensive, and he required prepayment of $8,500.

- Batchu had $10,000 in cash bail with the Connecticut State Court, $9,500 of which his state court counsel had agreed to release.

- Through no fault of Batchu, Attorney Foley had not received those funds until October 6, 2011, and Dr. Medoff stood ready to conduct the evaluation upon receipt of the funds.

- Government counsel had previously moved to continue the sentencing because the victim's mother had a business conflict.

- Due process required that Batchu be allowed to present a psychological evaluation.

[D.86; G.App.141-142].

On November 14, 2011, Judge Ponsor denied the motion to reconsider in an electronic order "for the reasons previously stated."   [G.App.16].

11

### 3.    Attorney Foley's Sentencing Memorandum.

On the morning of the sentencing hearing, Attorney Foley filed a sentencing memorandum in which he argued that Batchu be sentenced to the mandatory minimum sentence of 120 months of imprisonment for the following reasons:

- The child exploitation guidelines were not developed by the Sentencing Commission using an empirical approach and, as analyzed in *United States v. Shipley*, 560 F. Supp. 2d 739 (S.D. Iowa 2008), they should be afforded less deference that empirically-grounded guidelines.

- The nature and circumstances of Batchu's offenses and his history and characteristics warranted a sentence of 120 months' imprisonment, which would be sufficient but not greater than necessary to address the sentencing factors in 18 U.S.C. §3553(a).

- Batchu's "significant honorable civil service" to the United States coupled with his complete lack of criminal history and the shame he felt for his conduct also warranted a sentence of 120 months' imprisonment.

- The district court had received numerous letters regarding Batchu's character, which describe an intelligent, thoughtful, and honorable man, always willing to help others when needed.

- Based upon Batchu's situation personally and culturally there was no concern that he would recidivate.

- Batchu already had been significantly punished by the passing of his father while he was incarcerated, his present and future inability to assist his mother who struggles with mental illness, the stigma he will carry for the rest of his life, and the loss of his ability to practice medicine – a "long and hard earned accomplishment that is now gone[.]"

- Restitution would be aided by Batchu being able to resume being a productive citizen.

[D.89; G.App.145-148].

### 4.    The sentencing hearing.

Judge Ponsor convened the sentencing hearing on November 18, 2011.   At the outset of the hearing, Judge Ponsor noted that it had read the sentencing memoranda filed by Batchu and the government as well as the letters submitted on Batchu's behalf.   [G.App.151].   Judge Ponsor next heard argument on Batchu's objections to the Presentence Report, and, as relevant here, sustained Batchu's objection to the PSR with respect to Minor B but overruled the objection with respect to Minor C, and also overruled Batchu's objection to the obstruction of justice enhancement. [G.App.155-184].   Judge Ponsor calculated Batchu's TOL to be 40 which, when combined with his CHC of I, yielded a GSR of 292 to 365 months.   [G.App.182-184].

The government recommended a sentence of 360 months of imprisonment, arguing, among other things, that that sentence was warranted given the extraordinarily serious nature of Batchu's crimes against Minor A and the fact that he repeatedly violated court orders prohibiting him from contacting her. [G.App.184-196].   Victim impact statements were made by Minor A's father and mother, who detailed the "devastating impact" that Batchu's crimes had had on Minor

13

A and on their family generally, including that the ordeal had been a contributing factor in the suicide of one of Minor A's brothers.   [G.App.197-214].

When Judge Ponsor turned to Attorney Foley for his sentencing recommendation, he asked that Batchu be allowed to address the court from the witness box and said that Batchu wished to read a written statement and then present specific facts in a question-and-answer format.   [G.App.215].   Judge Ponsor said that he had not entertained such a procedure before and asked if government counsel would be able to cross-examine Batchu, and Attorney Foley responded that he assumed so because facts would be presented to the court and added that the procedure was unusual and "I think this is the first one I've done in probably a hundred sentencings."   [G.App.215].   Judge Ponsor thereupon addressed Batchu and said it would allow the procedure "if that's what you want to do," but cautioned him "[t]he stakes are very high here."   [G.App.216].

After Batchu was sworn, he began his written allocution by asking everyone to bow their heads to remember his father and Minor A's brother, at which point the Judge Ponsor intervened and told him to move on:

> **THE DEFENDANT:**  Your Honor, distinguished members of the court, and United States government, family members present, and especially the victim and her family.
>
> Umn, first and foremost, I think to pay our respects, we've lost two loving important individuals today on both sides of today's case, a

14

brother, a son, for the victim and victim's mother, and my father for the Batchu family.

I implore the Court for this moment if we may bow our heads.

**THE COURT:**  I'm not going to do that.

**THE DEFENDANT:**  Okay.

**THE COURT:**  Lets' move on.

[G.App.216-217].

Batchu thereupon read a lengthy written allocution after which he was questioned by Attorney Foley under oath, during which stated, among other things, that he had tried to live up to the ideals of his family and Indian culture "until that dark summer of 2009"; that as man of Indian descent, he felt a cultural pressure to be married at a young age; that he thought Minor A was 18 years or older when he first communicated with her; that after learning Minor A was only 15, he nonetheless "fell in love completely" with her; and that he continued to communicate with her notwithstanding the restraining and pretrial release orders entered against him because he was still in love with her.  [G.App.217-236].  At the conclusion of Batchu's testimony, Judge Ponsor said there was no need for cross-examination. [G.App.236].

Judge Ponsor thereupon imposed a sentence of 365 months of imprisonment and explained its sentencing decision in detail and at length.  [G.App.236-248].

Judge Ponsor first said it was skeptical that Batchu's allocution was sincere because

"I have a very, very strong sense that you are a supreme phony and that what we just

heard was a pretentious, frothy, narcissistic performance," and "[i]t struck me as

completely phony and narcissistic and self-justifying." [G.App.237-238]. Judge

Ponsor next explained why a sentence of 365 months of imprisonment was warranted:

> I have not seen a more determined course of criminal conduct in 28 years on the bench. You say the dark summer of 2009, this began in August of 2008. I do not believe that you did not know the age of this person from early on. But even after you were served with a restraining order, you obviously did know. You do not take someone that you love and have sex with them in a fitting room or in a car while their parents are waiting for them.

> This is nothing that any culture could ever have defined as love, and I really hope that some day if you're interested in being really honest with your family, let them listen to the video of you talking to this victim as I did yesterday. Let them listen to you going "Oh, baby, show me this; show me that." It was disgusting. It had nothing whatsoever to do with love.

> So a sentence at the top of the guideline range is justified both because of the course of conduct that you engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard.

[G.App.238]. Judge Ponsor concluded by stating that Batchu's conduct was "pure

exploitation of the ugliest sort," and that a sentence at the top of the GSR was "fully

justified by the extreme version of this offense[.]" [G.App.239, 240].

16

F.     __Batchu's Direct Appeal__.

In his direct appeal, Batch challenged his sentence on multiple grounds, including that the sentence imposed was procedurally and substantively unreasonable.   This Court rejected those arguments and affirmed Batchu's sentence. *See Batchu*, 724 F.3d at 6-14.   In doing so, and as relevant here, this Court found that the district court had "ably performed its procedural duty" and, "[a]s a whole, the court's explanation adequately took into account the relevant §3553(a) factors, and demonstrated that a lengthy sentence was necessary for the proper reasons."   *Id.* at 13.   This Court also found that the sentence of 365 months' imprisonment was substantively reasonable:

> The record here paints Batchu as a relentless and highly dangerous child molester.   He used his training in adolescent psychology to groom Minor A for sexual exploitation.   Batchu deliberately turned Minor A against her own family, inflicting a degree of harm that is palpable on the record of the sentencing hearing.   He went to great lengths to repeatedly sexually abuse Minor A despite two state prosecutions and multiple court orders demanding that he terminate his relationship with the child.   The quantity of child pornography and Batchu's video performance with Victim C found on his computer belie any notion that his pursuit of Minor A was an isolated instance of "poor judgment."
>
> Importantly, Batchu's destructive and relentless pursuit of a minor was not deterred by repeated warnings, court orders, and the virtual certainty of capture and imprisonment.   On such a record, the district court did not err in determining that the long stay behind prison bars it ordered is required.

*Id.* at 14.

17

### G. Proceedings on Batchu's 28 U.S.C. §2255 Motion.

### 1. Batchu's §2255 motion.

On November 18, 2014, Batchu timely moved to vacate his sentence under 28 U.S.C. §2255. [D.126; G.App.259-278].[3]  In the motion, Batchu raised three claims:

- an actual conflict of interest had developed because Attorney Foley "favored his own interests over my interests when he declined to timely retain an expert and evaluate me and submit a report for sentencing," as he "claimed as a fee and converted to his own use money that was available and earmarked to retain as an expert."

- he was constructively denied counsel in violation of the Sixth Amendment because Attorney Foley "did not take the time to revies and counsel me on my prepared allocution and when counsel failed to offer me any statement at the sentencing hearing in support of a reduced sentence."

- Attorney Foley provided ineffective assistance by failing to offer any argument at the sentencing hearing.

[D.126-1; G.App.262-265, 275-278].

Batchu thereafter filed a supplemental petition in support of his §2255 motion in which he elaborated on the claims raised in his initial motion.  [D.132; G.App.281-326].  With respect to the third claim raised in his original motion, Batchu asserted that he was deprived of effective assistance of counsel when Attorney

---

[3] Although Batchu's motion was not docketed until November 21, 2014, it motion was timely under the prison mailbox rule because Batchu certified that he had placed the motion in the prison mailing system on November 18, 2015. [G.App.271].

18

Foley failed to take a number of actions, including "fail[ing] to retain an expert for sentencing[.]"   [G.App.307-317].

### 2. Attorney Foley's verified affidavit.

On May 6, 2015, Attorney Foley filed a verified affidavit in which he responded to each of the claims made in Batchu's §2255 motion.   [D.133; G.App.327-335].   With respect to Batchu's first claim, Attorney Foley attested to the following:

- He had discussed with Batchu the use of a psychologist/psychiatrist on several occasions, and made many attempts to contact Dr. Ablow, who Batchu wanted to sue based on the recommendation of a fellow inmate, but he never received a response from Dr. Ablow.

- He had previously utilized Dr. Medoff in sex offense cases, but Dr. Medoff advised that he needed $8,500 up front to do the requisite work and would need at least 45 days to compete the report.

- The $5,000 that Batchu had provided to Imfoff & Associates for expert expenses, and which they had agreed to release, was insufficient to cover Dr. Medoff's fees, and, in September 2011, he informed Batchu that he needed the $9,500 bail money held by the State of Connecticut to make up the difference.

- On October 6, 2011, the State of Connecticut issued the $9,500 return of bail, which was forwarded to Batchu's former attorney, who in turned forwarded the check to Attorney Foley.

- He discussed with Batchu the untimeliness of the receipt of the bail money and the need to file a motion for a continuance of the sentencing hearing, which he filed the next day.

19

- After the sentencing hearing, Batchu said he wanted to pursue an appeal but subsequently advised that he wanted appointed appellate counsel due to finances, and Attorney Foley returned $4,800 to him but continued to take steps to secure the appeal.

[G.App.328-331].

With respect to Batchu's second claim, Attorney Foley attested that he had advised Batchu to keep his allocution short, but Batchu was adamant about the contents of the speech, and he therefore suggested following a question-and-answer presentation "to smooth out Mr. Batchu's soliloquy[.]"    [G.App.331-332]. Attorney Foley also attested that he "greatly disagreed" with the "moment of silence" Batchu intended to ask for, but Batchu insisted it would "impress upon the Court he was human with genuine sympathy towards others."    [G.App.331-332].

As to Batchu's third claim, Attorney Foley attested that Batchu at no time exhibited any symptoms of mental, social, or medical infirmities and made no mention of any family, social, or cultural issues that were germane to his defense. [G.App.332-334].

### 3.    Batchu's "hearing brief."

On July 19, 2017, the case was reassigned from Judge Ponsor to Judge Mastroianni.    [D.202].    Batchu, who now was represented by Kevin Barron, Esq., moved for discovery, which the district court granted.    [D.208, 215].    On November 19, 2019, Attorney Barron took Attorney Foley's deposition.    [D.242-2].

On March 10, 2020, Batchu filed a "hearing brief" in which he elaborated on the three claims raised in his §2255 motion.   [D.242; G.App.337-392].   Batchu first argued that an actual conflict of interest existed because Attorney Foley assertedly compromised his defense by delaying the retrieval of funds that should have been used to obtain an expert report so that he could keep those fees as appellate retainer fees.   [G.App.367-377].   Specifically, Batchu argued:

> Trial counsel created an actual conflict of interest in delaying retrieval of available expert funds so he could keep this money as his fee.   There is no other reasonable explanation.   Counsel avoided and delayed expenditure of defendant's expert funds and made no effort to obtain funds from public sources.   After sentencing, counsel kept the escrow and bail money as a retainer for an appeal that trial counsel never completed.   Trial counsel had no records of billable time and could only make a good faith estimate that his efforts justified keeping all the funds. Such facts establish an actual conflict of interest between petitioner and trial counsel.

[G.App.372-373].

Batchu next argued that there was a complete denial of counsel under *United States v. Cronic*, 466 U.S. 648 (1984), because Attorney Foley assertedly "appeared but pursued no apparent strategy" at the sentencing hearing, and instead "simply improvis[ed] a presentation with petitioner's testimony" during which Batchu "careened through a harmful allocution" that the district court criticized in imposing sentence.   [G.App.377-385].   In this regard, Batchu asserted that his "conflict of interest and denial of counsel claims intersect" inasmuch as the combination of this

21

deficient performance with Attorney's Foley's asserted conflict of personal pecuniary interest "points to a constructive denial of counsel at the critical sentencing phase, an error that pervades the entire proceeding."   [G.App.380].

Finally, Batchu argued that Attorney Foley provided ineffective assistance of counsel by failing to conduct an ordinary sex offender evaluation in advance of sentencing.   [G.App.385-392].   In making this claim, Batchu noted that his new counsel had obtained funds to retain Renee Sorrentino, M.D., to conduct an evaluation and offer an opinion about Batchu's risk of reoffending and management on supervised release, and Dr. Sorrentino found that Batchu presented an "average" or "moderate" risk and could likely be managed successfully in the community. [G.App.365-366, 385-386].

### 4.    The evidentiary hearing.

After the district court granted Batchu's motion for additional discovery, [D.249], Batchu moved for an evidentiary hearing and sought the testimony of Attorney Foley as well as other witnesses.   [D.268].   On August 19, 2020, the district court granted the motion with respect to Attorney Foley but denied it without prejudice as to other witnesses identified by Batchu.   [D.273].

The evidentiary hearing took place on February 24, 2021.   [G.App.393-462]. During the hearing, and as relevant here, Attorney Foley testified that he contacted Batchu's prior counsel several times about trying to get $9,500 held by the State of

Connecticut released so that it could be used to pay Dr. Medoff, that he had used Dr. Medoff in other cases he "[h]e is cash upfront before he does anything," that it was difficult getting the funds released, and that he did not retain a different expert because he did not expect it would be so difficult to get the funds from Connecticut released. [G.App.407-425]. He also testified, when asked if he believed there would be an appeal after sentencing, that "I did not expect it to be appealed because [293 months] was a significant amount of time, and I was hoping that he would not get more than that, which was a trigger to permit an appeal." [G.App.452].

With respect to the sentencing hearing, Attorney Foley testified that he had a "very disconcerting discussion" with Batchu in lock-up about how that hearing was going to progress, that Batchu insisted on reading the lengthy written allocution he had prepared notwithstanding Attorney Foley's advice that he simply apologize and not say much more, that Batchu insisted on asking for the moment of silence which Attorney Foley strongly advised against, and that the question-and-answer format was a way "to try and get way from [the written statement] and maybe go to a controlled question-and-answer." [G.App.434-437, 441].

### 5.    The district court denies Batchu's §2255 motion.

On March 1, 2021, the district court denied Batchu's §2255 motion. [G.Add.1-10; *see Batchu*, 523 F. Supp. 3d at 119-22]. With respect to the claim that Attorney Foley had an actual conflict of interest, the district court found that

"[s]everal factors undercut" Batchu's argument.   [G.Add.6].   *First*, the court found that at the time Attorney Foley was allegedly scheming to make sure there would be funds available for an appeal, it was unclear whether Batchu would be able to file an appeal or retain Attorney Foley for the appeal given the appeal waiver in the plea agreement, which waived any appeal if Batchu was sentenced to a term of imprisonment of 293 months or less.   [G.Add.6].

*Second*, while the district court stated that Attorney Foley waited "an irresponsibly long time" before arranging the psychological evaluation, the court found that the record "supports a finding that he intended to engage Dr. Medoff to provide a psychological evaluation before sentencing," it also found that "[a]ll the available evidence suggests that had the continuances been granted, Attorney Foley would have engaged Dr. Medoff for the evaluation at a cost of $8,500, leaving significantly less money for an appeal than if Attorney Foley had engaged a less costly expert over the summer." [G.Add.6-7].

*Third*, although again stating that "better lawyering would have included arranging the evaluation or requesting a further continuance earlier," the district court found that "the effort to obtain a continuance, and by extension an evaluation, appears genuine."   [G.Add.7].   In particular, the court pointed to the fact that the motion was filed two weeks before the sentencing hearing, the requested extension was approximately the same length as the continuance previously granted to the

government, Attorney Foley provided reasons for both the requested extension and why he had not been able to obtain the evaluation sooner, and, when the motion was denied, Attorney Foley moved for reconsideration, "hardly the action of an attorney relieved to have avoided incurring the expense for an evaluation."   [G.Add.7].

Turning next to Batchu's claim of a constructive denial of counsel at sentencing, the district court found that "[t]his factual record is inconsistent with any argument that there was a complete failure by Attorney Foley to test the government's case at sentencing," and pointed to the fact that Attorney Foley submitted a timely sentencing memorandum that sought a sentence of 120 months' imprisonment and argued why that sentence was warranted, as well as the fact that he submitted objections to the Presentence Report and "cogently argued his position during the hearing," which resulted in a one-level decrease in his offense level.   [G.Add.7-8]. The court also noted that Batchu was not simply arguing that Attorney Foley's asserted deficient performance amounted to a constructive denial of counsel, but rather that that performance "reach[es] the level of a constructive denial of counsel when *combined* with Attorney-Foley's conflict of personal pecuniary interest." [G.Add.8 (emphasis added)].   The court said it was uncertain whether this type of combination would fall within the circumstances identified in *Cronic*, but it need not explore that question because "[a]s discussed above, the evidence has not established

that Attorney Foley had a conflict of interest at the time of Defendant-Petitioner's sentencing."  [G.Add.8-9].

As to Batchu's third claim, the district court stated that although it was clear that Attorney Foley's failure to obtain a timely evaluation was a significant mistake, it was less clear that his performance was deficient under *Strickland v. Washington*, 466 U.S. 668 (1984), particularly given that he had moved for a continuance of the sentencing hearing.  [G.App.9-10].  The district court found, however, that it did not need to answer that question because there was "no reasonable probability" that the submission of a psychological evaluation would have resulted in a lower sentence because Judge Ponsor "stated clearly that he based his sentence on 'the course of conduct that [Defendant-Petitioner] engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard,'" and it was clear that generalized concerns about recidivism did not play a significant role in Judge Ponsor's sentencing decision.  [G.App.10].

### 6.     Batchu's motions for a certificate of appealability and for reconsideration.

On March 27, 2011, Batchu filed what he styled as a request for amended or additional findings under Fed. R. Civ. P. 52, in which he posed several interrogatories to the district court.  [D.285; G.App.465-470].  On March 29, 2011, Batchu moved for a certificate of appealability as to two of the three claims raised in his §2255

motion: (1) his claim that Attorney Foley labored under an actual conflict of interest; and (2) his claim that Attorney Foley provided ineffective assistance at the sentencing hearing by failing to obtain a sex offender evaluation.   [D.286; G.App.471-475]. And on March 30, 2011, Batchu moved for reconsideration of the denial of his §2255 motion.   [D.287; G.App.465-466].

### 7.    The district court denies reconsideration but grants the motion for a certificate of appealability.

On April 1, 2021, the district court denied Batchu's motion for additional findings and his motion for reconsideration in a lengthy electronic order that stated, in pertinent part:

> The court considered the documents in the record, heard Foley testify, and concluded the facts regarding any future appeal were too uncertain to create an actual financial conflict of interest in the months leading up to sentencing.   The court also considered the facts of the underlying offense, the explanations provided by the sentencing judge at sentencing, and the recent evaluation of Defendant-Petitioner before determining that there was no reasonable probability that submission of a psychological evaluation would have shortened Petitioner[']s sentence.   The court[']ss ruling addressed its disagreement with theories urged by Defendant-Petitioner, including, issues related to the failure to obtain an evaluation, Attorney Foley[']s inability, under circumstances as they existed, to stop defendant[']s elocution at sentencing, and the existence of a financial conflict.   The presence of an appellate waiver in the plea agreement was only one consideration among several that supported the courts conclusion that Foley did not have an actual financial conflict in the months leading up to the sentencing.   Contrary to Defendant-Petitioner's argument, the court did not find that the plea agreement waiver section "foreclosed" an appeal, and thereby eradicated any expectation of an appellate fee, but rather, as the court explained, it was "unclear whether Defendant-Petitioner would

27

be able to file an appeal, let alone that he would retain Attorney Foley for such an appeal." * * * That a legally thorough analysis by Foley after sentencing would cast hope on survivable appellate options, including enforceability and validity or scope of the waiver, but also ineffective assistance, is not evidence that he was counting on being retained to conduct the appeal. Having heard directly from Attorney Foley, the court was not persuaded that Attorney Foley engaged in such detailed analysis as part of a ploy to get an appellate fee. Petitioner has been given significant leeway, in terms of opportunity, time and resources, to develop his arguments. Though counsel has presented the arguments thoroughly, the court was not persuaded that a financial conflict existed or that any other basis for habeas relief is applicable in this case. Defendant-Petitioner's most recent arguments add nothing new that would cause the court to revisit its ruling.

[D.288; G.Add.11]. The district court stated, however, that because it was possible that other reasonable jurists may view the facts differently, it would grant Batchu's motion for a certificate of appealability. [G.Add.11-12].

## SUMMARY OF ARGUENT

1.     Batchu has failed to show that Attorney Foley had an actual conflict of interest. The district court found that the record supported a finding that Attorney Foley intended to engage Dr. Medoff to provide a psychological evaluation before sentencing, and, when he was unable to secure Dr. Medoff's services in time for the sentencing hearing, he moved to continue the sentencing hearing and thereafter for reconsideration when his continuance motion was denied. The district court also found that the motion to continue the sentencing hearing was genuine, and it was far from certain that an appeal would even be available or that Batchu would retain

28

Attorney Foley to handle that appeal given the appeal waiver in the plea agreement. In these circumstances, Batchu has failed to show that Attorney Foley labored under an actual conflict of interest.

    **2.**    Batchu's claim that there was a complete denial of counsel at the sentencing hearing is unreviewable because it was not covered by the certificate of appealability.   Batchu only requested a certificate of appealability as to the other two claims raised in his §2255 motion, and the district court granted that motion but dd not expand the certificate to include this claim.   Regardless, the claim fails. Because Batchu bases this claim on the *combination* of Attorney Foley's asserted failures at the sentencing hearing and his alleged conflict of pecuniary interest, the conclusion that Batchu failed to show an actual conflict of interest dooms this claim. In any event, the district court correctly found that the record did not support Batchu's assertion that Attorney Foley's actions amounted to a complete failure of counsel at sentencing, and that finding is unassailable.

    3.    The district court correctly determined that Batchu failed to show that Attorney Foley provided ineffective assistance at the sentencing hearing.   Judge Ponsor's sentencing decision – which this Court found on direct appeal to be procedurally and substantively reasonable – was based on the predatory and extreme nature of Batchu's offenses, and was not based on concerns about a risk of recidivism. Batchu therefore has failed to show prejudice under *Strickland*.

29

## ARGUMENT

## I. THE DISTRICT COURT CORRECTLY DETERMINED THAT BATCHU FAILED TO SHOW THAT HIS COUNSEL HAD AN ACTUAL CONFLICT OF INTEREST.

The first claim Batchu raised in his §2255 motion and related pleadings – pleadings which he has adopted as his opening brief in this appeal – is that Attorney Foley had an actual conflict of interest because he assertedly "compromised petitioner's defense in order to convert Batchu's expert retainer money for appellate retainer fees." [G.App.372]. The district court correctly found that the record failed to support that claim.

### A. Standard of Review

In reviewing the denial of a §2255 motion, this Court undertakes a de novo review of the district court's legal conclusions and applies a clear error standard to its factual findings. *See Watson v. United States*, 37 F.4th 22, 27 (1st Cir. 2022).

### B. Batchu is Not Entitled to Relief on This Claim.

Under the Sixth Amendment, a defendant has a right to conflict-free counsel. *See United States v. Simon*, 12 F.4th 1, 53 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 2811 (2012), 142 S. Ct. 2812 (2022). A claim of ineffective assistance ordinarily requires demonstrating "prejudice," *i.e*, a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. But a defendant "'who shows that a conflict

of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief." *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis added in *Mickens*, quoting *Cuyler v. Sullivan*, 446 U.S. 335, 349-50 (1980)).   An actual conflict of interest arises when an attorney subordinates his duty to his client to "other interests or loyalties." *United States v. Soldevila-Lopez*, 17 F.3d 480, 486 (1st Cir. 1994).   To make such a showing, this Court requires a defendant to show that "(1) the attorney could have pursued a plausible alternative defense strategy, and (2) the alternative trial tactic was inherently in conflict with or not pursued due to the attorney's other loyalties or interests." *Familia-Consoro v. United States*, 160 F.3d 761, 764 (1st Cir. 1998).   This Court has cautioned, however, that "[a] theoretical or merely speculative conflict of interest will not invoke the per se rule." *Soldevila-Lopez*, 17 F.3d at 487.

In this case, Batchu failed to show that Attorney Foley labored under an actual conflict of interest.   *First*, the district court found that the record supported a finding that Attorney Foley intended to engage Dr. Medoff to provide a psychological evaluation before sentencing, and that "[a]ll the available evidence suggests that had the continuances been granted, Attorney Foley would have engaged Dr. Medoff for the evaluation at a cost of $8,500, leaving significantly less money for an appeal than if Attorney Foley had engaged a less costly expert over the summer."   [G.Add.6. The court found, for example, that Attorney Foley had determined by June 2011 that

31

Batchu should undergo a psychological evaluation prior to sentencing, that he had conversations with Dr. Medoff about conducting the evaluation, and that Dr. Medoff demanded an up-front fee of $8,500.   [G.Add.2].   The court additionally found that Attorney Foley appeared to have requested payment to Dr. Medoff from his prior counsel but only $48 was paid rather than the $4,800 in available funds, and, after Attorney Foley received the returned bail money from Connecticut sometime in or around October 2011, he moved to continue the sentencing hearing on November 1, 2011, and then moved for reconsideration of the denial of that motion on November 13, 2011.   [G.Add.2-3].

*Second*, although noting that "better lawyering would have included arranging the evaluation or requesting a further continuance earlier," the district court expressly found that "the effort to obtain a continuance, and by extension an evaluation, appears genuine."   [G.Add.7].   That was so because the motion was filed more than two weeks before the sentencing hearing, the requested continuance was approximately the same length the government had earlier obtained, Attorney Foley provided reasons for the requested continuance, and, when the motion was denied, he promptly sought reconsideration, "hardly the action of an attorney relieved to have avoided incurring the expenses for an evaluation."   [G.Add.7].

*Third*, the district court also found that at the time Batchu asserts Attorney Foley was scheming to make sure there were funds available for an appeal, "it was

32

unclear whether Defendant-Petitioner would be able to file an appeal, let alone that he would retain Attorney Foley for such an appeal."   [G.Add.6].   Indeed, the appeal waiver in the plea agreement provided that Batchu waived any right to challenge a sentence of 293 months or less in a direct appeal or on collateral review. [G.App,.52].   That is a significant benchmark – 293 months amounts to a sentence of 24 year and five months – and it was hardly certain in the months leading up to the sentencing hearing that Judge Ponsor would impose a sentence that would exceed 293 months and therefore allow for an appeal.   The district court also found in denying reconsideration that "[h]aving heard directly from Attorney Foley," it was "not persuaded" that Attorney Foley engaged in any kind of detailed analysis of the possibilities of an appeal "as part of a ploy to get an appellate fee."   [G.Add.11].

Batchu makes no attempt to show that these factual findings, including the district court's credibility assessment of Attorney Foley, are clearly erroneous. Indeed, his motion for reconsideration was premised on the erroneous assertion that the district court had found that the plea agreement foreclosed an appeal. [G.App.477].   Regardless, for the reasons just discussed, the district court did not err in finding that Batchu failed to show that Attorney Foley labored under an actual conflict of interest in this case.

## II.   BATCHU'S CLAIM THAT THERE WAS A COMPLETE DENIAL OF COUNSEL AT THE SENTENCING HEARING IS UNREVIEWABLE BECAUSE IT IS NOT COVERED BY THE CERTIFICATE OF APPEALABILITY, AND LACKS MERIT IN ANY EVENT.

The second claim Batchu raised in his §2255 motion and related pleadings is that Attorney Foley's actions and inactions at the sentencing hearing, coupled with the actual conflict of interest that he attributed to him, amounted to a complete denial of counsel.   That claim is unreviewable because it is not covered by the certificate of appealability, and lacks merit in any event.

### A.   This Claim is Unreviewable.

Under 28 U.S.C. §2253(c), this Court "cannot consider an issue presented in a habeas petition unless a certificate of appealability is obtained *with respect to that issue*."   *Watson*, 37 F.4th at 30 (emphasis in original, quoting *Butterworth v. United States*, 775 F.3d 459, 469 (1st Cir. 2015), in turn quoting *Peralta v. United States*, 597 F.3d 74, 83 (1st Cir. 2010)).   In this case, Batchu moved for a certificate of appealability as to the other two claims raised in his §2255 motion, but he did not seek a certificate of appealability as to the claim that there was a complete denial of counsel at the sentencing hearing.   [G.App.471-475].   The district court granted that motion and stated that "as it is possible that other reasonable jurists may view the facts differently, Petitioner's Motion for Certificate of Appealability is allowed." [G.Add.11-12].   The district court did not, in other words, expand the certificate of

34

appealability granted to include other claims, with the result that only the two claims identified in Batch's motion are reviewable under 28 U.S.C. §2253(c)(3).  As a result, Batchu's claim that there was a complete denial of counsel at the sentencing hearing is not properly before this Court.  *See Watson*, 37 F.4th at 30.

### B.    <u>Regardless, Batchu is Not Entitled to Relief on This Claim</u>.

The Supreme Court has stated that in certain extreme circumstances – such as where "counsel entirely fails to subject the prosecution's case to meaningful adversarial testing," or where counsel was "totally absent" or "prevented from assisting the accused during a critical stage of the proceeding" – a court may presume prejudice to the defendant without further inquiry.   *Cronic*, 466 U.S. at 659 & n.25. The Court subsequently made clear, however, that "[w]hen we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete" as "[w]e said 'if counsel *entirely* fails to subject the prosecution's case to meaningful adversarial testing.'" *Bell v. Cone*, 535 U.S. 685, 696-97 (2002) (emphasis added in *Cone*, quoting *Cronic*, 466 U.S. at 659).   This Court thus has recognized that in order for the *Cronic* presumption of prejudice to apply, "the circumstances leading to counsel's ineffectiveness [must be] so egregious that the defendant was in effect denied any meaningful assistance at all."   *United States v. Theodore*, 468 F.3d 52, 56 (1st Cir. 2006) (quotation omitted); *see also Fusi v. O'Brien*, 621 F.3d 1, 7 (1st

Cir. 2010) (stating that "the attorney's incompetence must rise to the level of a complete denial of counsel; bad lawyering, regardless of how bad is insufficient") (quotation omitted).

As the district court found, the circumstances here do not come close to rising to this level.  To begin with, and as the district court noted, this claim is based not simply on Attorney Foley's performance at the sentencing hearing, but rather on Batchu's assertion that "[t]he *combination* of this deficient performance with the lawyer's conflict of personal pecuniary interest," inasmuch as the "conflict of interest and denial of counsel claims intersect."  [G.App.380 (emphasis added)].  Hence, even assuming *arguendo* that this combination might fall within the scope of circumstances identified in *Cronic*, the district court correctly determined that this claim necessarily fails because, as discussed above in Part I, Batchu failed to show that Attorney Foley labored under an actual conflict of interest in this case. [G.Add.8-9].

Moreover, even putting this failure aside, the district court found that the "factual record is inconsistent with any argument that there was a complete failure by Attorney Foley to test the government's case at sentencing."  [G.Add.8].  That finding is unassailable.  As the district court detailed, Attorney Foley not only filed objections to the PSR, but he submitted a sentencing memorandum in which he argued that Batchu should be sentenced to 120 months' imprisonment – well below

36

the sentence of 365 months imposed by the district court – and provided several reasons in support of that recommendation.    [PSR, Def. Objections ##1-9; G.App.145-147].    In particular, Attorney Foley argued in the sentencing memorandum that: (1) the child exploitation guidelines were not empirically grounded and they therefore were entitled to less deference than other guidelines; (2) a sentence of 120 months would be sufficient but not greater than necessary to address the §3553(a) sentencing factors given the nature and circumstances of his offenses and his personal history and characteristics; (3) Batchu had provided "significant honorable civil service" to the United States and felt shame for his conduct; (4) the district court had received numerous letters attesting to Batchu's character; (5) it was unlikely that Batchu would recidivate based on his situation personally and culturally, (6) Batchu had already suffered personal and financial hardships, including the loss of his hard-earned medical career; and (7) restitution would be aided by Batchu being able to resume being a productive citizen.    [G.App.145-147].    And while Attorney Foley did not file the memorandum until the morning of the sentencing hearing, Judge Ponsor stated at the outset of that hearing that he had reviewed it.    [G.App.151; *see also* G.Add.7 (noting that Batchu's sentencing memorandum "was received in time for [Judge Ponsor] to review it prior to the sentencing hearing")].

In addition, the district court noted that Attorney Foley "cogently argued his position" regarding his objections to the PSR during the sentencing hearing, and that

37

his arguments were partially successful in that they resulted in a one-point reduction of Batchu's TOL. [G.Add.8]. And that one-point reduction in Batchu's offense level was not insignificant. The Probation Office calculated Batchu's TOL to be 41 which, when combined with his CHC of I, yielded a GSR of 324 to 405 months. [PSR ¶135]. By contrast, after sustaining Attorney Foley's objection to the PSR with respect to Minor B, Judge Ponsor calculated Batchu's TOL to be 40 which, when combined with his CHC of I, yielded a GSR of 292 to 365 months. [G.App.182-184]. Hence, if Attorney Foley had not successfully pressed this objection and if Judge Ponsor adhered to his view that a sentence at the top of the GSR was warranted, Batchu could have been sentenced to 405 months' imprisonment, or 40 months above the sentence actually imposed in this case.

In these circumstances, even if this claim was reviewable -- and it is not for the reasons discussed above – it fails both because Batchu expressly linked this claim to his claim that Attorney Foley had an actual conflict of interest, which lacks merit for the reasons discussed in Part I, and because he has not shown that he was "denied any meaningful assistance at all" at the sentencing hearing. *See Theodore*, 468 F.3d at 56.

## III.  THE DISTRICT COURT CORRECTLY DETERMINED THAT BATCHU FAILED TO SHOW THAT HIS COUNSEL PROVIDED INEFFECTIVE ASSISTANCE AT THE SENTENCING HEARING.

The third claim Batchu raised in his §2255 motion and related pleadings is that Attorney Foley provided ineffective assistance at the sentencing hearing by failing to present a psychological evaluation that would have shown that his risk of recidivism was low.   The district court correctly determined that Batchu was not entitled to relief on this claim because he had not shown prejudice under *Strickland*.

### A.  <u>Standard of Review</u>

Because Batchu preserved this claim, this Court reviews legal conclusions de novo and any factual findings for clear error.   *See Watson*, 37 F.4th at 27.

### B.  <u>Batchu is Not Entitled to Relief on This Claim</u>.

A defendant claiming ineffective assistance of counsel on collateral review must prove both (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that the deficient performance prejudiced the defense, which requires a showing that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.   *See Strickland*, 466 U.S. at 688, 694.   In this case, the district court determined that Batchu's claim that Attorney Foley provided ineffective assistance by failing to submit a psychological evaluation prior to the sentencing hearing failed because he could not show prejudice.   [G.Add.9-10].   That conclusion was sound.

39

In sentencing Batchu to a term of imprisonment of 365 months, Judge Ponsor stated he "ha[d] not seen a more determined course of criminal conduct in 28 years on the bench," and that "a sentence at the top of the guideline range is justified both because of the course of conduct that you engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard."  [G.App.238].  The district court added that Batchu's conduct "was "pure exploitation of the ugliest sort," and that a sentence at the top of the GSR was "fully justified by the extreme version of this offense[.]"  [G.App.239, 240]. Likewise, in the Statement of Reasons, Judge Ponsor wrote that "[t]he court imposed a sentence at the high end of the advisory guideline range due to the predatory nature of the crime and the severity of the offenses."  [D.91, at 11].  Hence, and as the district court noted, "generalized concerns about recidivism did not play a significant role in Judge Ponsor's sentencing decision."  [G.Add.10].  As a result, Batchu is not entitled to relief on this claim because he failed to show a reasonable probability that the submission of a psychological evaluation would have led to a different result.

Nor is there any merit to Batchu's assertion in his motion for a certificate of appealability that "[i]n this case, petitioner shows harm because counsel's omission implicates the substantive reasonableness of the sentence."  [G.App.474].  This Court held in Batchu's direct appeal that the sentence imposed was substantively reasonable, *see* 724 F.3d at 13-14, and while the law of the case doctrine "does not

40

automatically bar ineffective assistance of counsel claims," *Watson*, 37 F.4th at 26-27, Batchu has failed to point to anything suggesting this Court's assessment would change had a psychological evaluation been presented to Judge Ponsor at sentencing. After all, this Court "generally respect the district court's sentence so long as the court has provided a plausible explanation, and the overall result is defensible," and this Court found that this standard was satisfied because "[t]he record here paints Batchu as a relentless and highly dangerous child molester," Batchu's "destructive and relentless pursuit of a minor was not deterred by repeated warnings, court orders, and the virtual certainty of capture and imprisonment," and, "[o]n such a record, the district court did not err in determining that the long stay behind prison bars it ordered is required." 724 F.3d at 13-14 (quotation omitted).

Hence, Batchu has failed to show a reasonable probability that a psychological evaluation would have changed Judge Ponsor's sentencing calculus. And he also has failed to show a reasonable probability that the submission of such a report would have changed this Court's assessment of the procedural or substantive reasonableness of any sentence imposed, as this Court has said that the decision "to focus on certain factors over others entail[s] a choice of emphasis, not a sin of omission and is not a basis for a founded claim of sentencing error." 724 F.3d at 13 (quotation omitted).

## <u>CONCLUSION</u>

For these reasons, the government respectfully requests that the Court affirm

the denial of Batchu's §2255 motion.

Respectfully submitted,

RACHAEL S. ROLLINS
United States Attorney

By:    /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Assistant U.S. Attorney

42

## CERTIFICATE OF COMPLIANCE WITH
## Rule 32(a)

### Certificate of Compliance with Type-Volume Limitation
### Typeface Requirements, and Type Style Requirements

1.  This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because this brief contains **9,960** words (an opening or answering brief may not exceed 13,000 words a reply brief may not exceed 6,500 words), excluding the parts of the brief exempted by Fed. R. App. P. 32(f) (*i.e.*, the corporate disclosure statement, table of contents, table of citations, addendum, and certificates of counsel).

2.  This brief complies with the typeface requirements of Fed. R. RA P. 32(a)(5) and the type style requirements of Fed. R. RA P. 32(a)(6) because this brief has been prepared in proportionally spaced typeface using Times New Roman 14 point, in Microsoft Word version 2016.

 /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN
Dated:   July 15, 2022

43

## <u>CERTIFICATE OF SERVICE</u>

I, Mark T. Quinlivan, AUSA, hereby certify that on July 15, 2022, I served a copy of the foregoing document by first-class mail, postage prepaid, on the petitioner-appellant:   Mani Batchu, No. 91057-038, FCI Beaumont Low, PO Box 26020, Beaumont, TX 77720-6020.
.

 /s/ *Mark T. Quinlivan*
MARK T. QUINLIVAN

No. 21-1292

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIRST CIRCUIT

MANI BATCHU,
PETITIONER-APPELLANT

v.

UNITED STATES OF AMERICA,
RESPONDENT-APPELLEE

ADDENDUM TABLE OF CONTENTS

1. *Memorandum and Order Regarding Defendant-Petitioner's Motion to Vacate Under 28 U.S.C. §2255* (dated March 1, 2021) ................. G.Add.1

2. Electronic Order (dated April 1, 2021)..............................................G.Add.11

# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | Criminal Action |
| v. | ) | No. 10-30008-MGM |
| | ) | |
| MANI BATCHU, | ) | |
| | ) | |
| Defendant-Petitioner. | ) | |
| | ) | |

## MEMORANDUM AND ORDER REGARDING DEFENDANT-PETITIONER'S MOTION TO VACATE UNDER 28 U.S.C. § 2255
(Dkt. No. 126)

March 1, 2021

MASTROIANNI, U.S.D.J.

## I.   INTRODUCTION

While serving a lengthy sentence of incarceration, Defendant-Petitioner, Mani Batchu, filed a motion under 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence. He asserted that he had been sentenced in violation of his Sixth Amendment right to counsel because his privately retained counsel had an actual conflict of interest and was ineffective at sentencing. His petition was originally considered by the sentencing judge, who appointed counsel to assist with the petition. The case was later transferred to this court. After a significant period of discovery and the filing of lengthy memoranda by both Defendant-Petitioner and the government, this court held an evidentiary hearing on February 24, 2021 at which Attorney Richard Foley, Defendant-Petitioner's trial counsel, appeared. For the reasons set out below, the court now denies the motion for relief pursuant to § 2255.

1

**G.Add.1**

## II.    SUMMARY OF RELEVANT FACTS

On April 1, 2010, a grand jury returned an eight-count indictment against Defendant-Petitioner charging him with crimes arising from him grooming and sexually abusing a fifteen-year-old child when he was around 30 years old, had completed medical school, and was working as a psychiatrist. Defendant-Petitioner continued to pursue a sexual relationship with the minor victim after learning her age and after a restraining order was entered barring him from having contact with her.

Defendant-Petitioner's family paid a $37,500 retainer to a "nationwide" referral law firm based in California, along with a $5,000 payment for anticipated expert services. The referral firm sent the case to Attorney Richard Foley, who agreed to represent Defendant-Petitioner for a flat fee of $10,000. Defendant-Petitioner's family had also previously paid money for bail in a related criminal matter in Connecticut state court. During the course of Defendant-Petitioner's federal case, $9,500 of that bail money was returned to Defendant-Petitioner.

There was large amount of evidence, including significant electronic evidence, and the case against Defendant-Petitioner was strong. On May 7, 2011, he pleaded guilty to five counts of the indictment. His sentencing was set for October 5, 2011. Pursuant to the written plea agreement, Defendant waived his right to appeal his sentence unless it exceeded 293 months. (Plea Agreem't, Dkt. No. 79, 8.)  By June of 2011, Attorney Foley had determined that Defendant-Petitioner should undergo a psychological evaluation prior to sentencing. Attorney Foley had some conversation with one potential expert, Dr. Medoff, who charged an up-front fee of $8,500. Attorney Foley does not recall having received the returned bail money at that time and, in fact, remembers that obtaining the money had been difficult. There is some evidence that a check may have been sent to him in January of 2011, but no evidence that he actually received it at that time. Defendant-Petitioner had also suggested a different expert. Attorney Foley tried to contact that individual, but his efforts were

2

**G.Add.2**

unsuccessful. At some point during the summer of 2011, Attorney Foley appears to have requested payment to Dr. Medoff from the referral law firm, but only $48 was paid, rather than the $4,800 in available funds. Sometime in or around October of 2011, Attorney Foley received the returned bail money from Connecticut.

Meanwhile, on September 2, 2011, the government requested the sentencing be continued at the request of the minor victim's family. Defendant-Petitioner assented to the request and the sentencing was rescheduled to November 18, 2011. Counsel for Defendant-Petitioner, requested a further continuance on November 1, 2011. In his motion, Attorney Foley informed the court that an expert had been retained to conduct a psychological examination of Defendant-Petitioner, but more time was needed to conduct the evaluation because funds for the evaluation had only recently become available. The government opposed the motion because the continuance would delay closure for the minor victim and her family.

District Judge Michael A. Ponsor, denied the motion on November 7, 2011, issuing a short electronic order stating in part, "Defendant has waited too long to arrange for the evaluation." Attorney Foley filed a motion for reconsideration, which was also denied. The government filed its sentencing memorandum on November 17, 2011 and Attorney Foley filed his sentencing memorandum on November 18, 2011, the day the sentencing was held.

The court found the advisory sentencing guidelines range was 292 to 365 months. The government requested a sentence of 360 months of incarceration and 365 months of supervised release. Defendant sought a 120-month sentence. Attorney Foley argued the sentencing guidelines were not based on empirical data; Defendant-Petitioner was unlikely to recidivate; had already been punished through family losses while he was incarcerated and by losing his medical license; and would be more able to pay restitution if a shorter sentence was imposed.

At the sentencing, the minor victim's mother read a statement written by the minor victim and made a statement of her own, both describing in detail the harm Defendant-Petitioner's actions caused to the minor victim and her family. After a recess, Defendant-Petitioner addressed the court. Attorney Foley requested that Defendant-Petitioner be allowed to make his statement from the witness box rather than counsel table in order to present certain facts. Judge Ponsor expressed some concern about this unusual approach, as it opened the door to cross-examination by the government, but allowed it to go forward after cautioning Defendant-Petitioner that the stakes were quite high, but that he could proceed if that was what he, Defendant-Petitioner, wanted to do. Defendant-Petitioner made a lengthy, meandering statement that included a request (rejected by Judge Ponsor) that those in the courtroom bow their heads to the memories of both the minor victim's recently deceased brother and Defendant-Petitioner's own father. He went on to provide details of his family background and cultural history, well as high-flown descriptions of his moral transformation subsequent to his arrest.

Following Defendant-Petitioner's statement, Attorney Foley put some questions to his client about his life at the time he met the minor victim through an online dating site. Defendant-Petitioner responded, often with lengthy answers and on several occasions, Judge Ponsor interrupted to move the questioning along. At the conclusion of the questioning, Judge Ponsor informed the government that there would be no need for cross-examination. He then sentenced Defendant-Petitioner to 365 months of imprisonment and 360 months of supervised release. Judge Ponsor explained that "a sentence at the top of the guideline range is justified both because of the course of conduct that [Defendant-Petitioner] engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard." (Sent'g Trans., Dkt. No. 99, 89-90.) With respect to Defendant-Petitioner's conduct, Judge Ponsor observed that video evidence reviewed by the court was at odds with Defendant-Petitioner's professed love for the

**G.Add.4**

minor victim, rejected any suggestion that Defendant-Petitioner's cultural background explained his conduct, and stated that he had "not seen a more determined course of criminal conduct in 28 years on the bench." (*Id.* at 89-90.) Judge Ponsor described Defendant-Petitioner's statement to the court as "a pretentious, frothy, narcissistic performance," that struck him "as completely phony and narcissistic and self-justifying." (*Id.*)

Following sentencing, the $4,800 advanced for expert fees was returned to Defendant-Petitioner's mother and the $9,500 of returned bail money was paid to Attorney Foley as a flat fee for an appeal. Attorney Foley filed a notice of appeal, but does not appear to have done much substantive work on the appeal. When he was later replaced as appellate counsel, the file he forwarded to successor appellate counsel did not contain notes, drafts, or other similar work product related to the appeal.

### III. DISCUSSION

At the outset, the court observes that "[p]ostconviction relief on collateral review is an extraordinary remedy, available on a sufficient showing of fundamental unfairness." *Singleton v. United States*, 26 F.3d 233, 236 (1st Cir. 1994). Defendant-Petitioner argues he has met this standard by demonstrating (1) an actual conflict of interest that prevented Attorney Foley from adequately representing him at sentencing, (2) a combination of circumstances resulted in a constructive denial of Defendant-Petitioner's right to counsel during the critical stage of sentencing, and (3) Attorney Foley failed to raise an obvious and persuasive sentencing defense.

The court addresses each of these arguments in turn.

#### A. Actual Conflict of Interest

"'[A] defendant who shows that a conflict of interest *actually affected the adequacy of his representation* need not demonstrate prejudice in order to obtain relief.'" *Mickens v. Taylor*, 535 U.S. 162, 171 (2002) (emphasis added in original) (quoting *Cuyler v. Sullivan*, 446 U.S. 335349-50 (1980)).

Here, Defendant-Petitioner argues Attorney Foley created a personal pecuniary conflict of interest between his obligations to represent Defendant-Petitioner at sentencing and his interest in obtaining a substantial appellate fee and that this conflict negatively impacted the quality of his representation. In support of this argument, Defendant-Petitioner asserts that Attorney Foley intentionally delayed retaining an expert to conduct a psychological examination of Plaintiff in order to ensure that there would be leftover funds to pay him a substantial flat-fee for the appeal. While counsel for Defendant-Petitioner has identified evidence of a disturbing laxity in Attorney Foley's approach to preparing for sentencing, that evidence falls short of supporting his theory that a pecuniary conflict of interest existed and caused Attorney Foley to intentionally delay obtaining an expert evaluation of Defendant-Petitioner for the purpose of ensuring there would be funds available to pay him a large appellate fee.

Several factors undercut Defendant-Petitioner's argument. First, at the time Attorney Foley was allegedly scheming to make sure there would be funds available for an appeal, it was unclear whether Defendant-Petitioner would be able to file an appeal, let alone that he would retain Attorney Foley for such an appeal. The written plea agreement, negotiated by Attorney Foley, waived Defendant-Petitioner's right to challenge his conviction on direct appeal and his right to appeal a sentence of 293 months or less. Second, while the evidence clearly shows that Attorney Foley waited an irresponsibly long time before arranging the psychological evaluation, it also supports a finding that he intended to engage Dr. Medoff to provide a psychological evaluation before sentencing. He spoke with Dr. Medoff as early as June and made some effort to obtain partial payment for Dr. Medoff over the summer. As the sentencing date approached, Attorney Foley requested a continuance. All the available evidence suggests that had the continuance been granted, Attorney Foley would have engaged Dr. Medoff for the evaluation at a cost of $8,500, leaving

**G.Add.6**

significantly less money for an appeal than if Attorney Foley had retained a less costly expert over the summer.

Better lawyering would have included arranging the evaluation or requesting a further continuance earlier, but the effort to obtain a continuance, and by extension an evaluation, appears genuine. It actually was reasonable for Attorney Foley to anticipate the continuance request would have been granted under all the circumstances. The motion for the continuance was filed more than two weeks before the sentencing and the extension of time sought was slightly more than a month, approximately the same length as the continuance that had previously been granted to the government. Attorney Foley provided both a reason for needing the extension – to obtain the evaluation – and a reason why he had not been able to obtain the evaluation sooner – the prior lack of funds. Finally, when the motion was denied, Attorney Foley moved for reconsideration, hardly the action of an attorney relieved to have avoided incurring the expense for an evaluation.

### B. Constructive Denial of Counsel at Sentencing

Defendant-Petitioner next argues the representation provided by Attorney Foley in connection with his sentencing was so lacking that Defendant-Petitioner had effectively been abandoned at sentencing. In *U.S. v. Cronic*, the Supreme Court recognized that "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights." 466 U.S. 648, 659 (1984). The Court later clarified that in order for an attorney's performance to descend to this level "the attorney's failure [to test the prosecutor's case] must be complete." *Bell v. Cone*, 535 U.S. 685, 697 (2002). On the record before the court, it is clear Attorney Foley's efforts on behalf of Defendant-Petitioner did not fall to this level.

Attorney Foley submitted a sentencing memorandum, which was received in time for the court to review it prior to the sentencing hearing. The sentencing memorandum asked the court to impose a sentence of 120 months, well below the sentence requested by the government and below

7

**G.Add.7**

the guidelines range. Attorney Foley argued a shorter sentence was warranted because of shortcomings with the way the sentencing guidelines were developed. He also argued that Defendant-Petitioner background, including his lack of criminal history, warranted a sentence shorter than the guidelines range and that such sentence would be sufficient because Defendant-Petitioner's background made it unlikely he would recidivate. Finally, Attorney Foley asserted a shorter sentence would increase Defendant-Petitioner's ability to pay restitution. In addition to submitting a sentencing memorandum, Attorney Foley raised objections to the presentence report and cogently argued his position during the hearing. His arguments were partially successful, resulting in a one-point reduction in the offense level. This factual record is inconsistent with any argument that there was a complete failure by Attorney Foley to test the government's case at sentencing.

In addition to recognizing the severity of a complete failure by counsel to test the prosecution's case, the court in *Cronic* also indicated that there might be situations "in which the surrounding circumstances make it unlikely that the defendant could have received the effective assistance of counsel," such that prejudice can be assumed without demonstrating specific errors by counsel that prejudiced the defendant. *Cronic*, 648 U.S. at 666. This standard is met where there are circumstances that made it unlikely any attorney could provide effective assistance. (*Id.* at 660-61.) Usually, this means circumstances external to counsel's particular performance. However, the factors identified by Defendant-Petitioner reflect choices made by Attorney Foley, including his decision not to file a motion for a departure or variance and his decision to engage in a question-and-answer session with Defendant-Petitioner following Defendant-Petitioner's statement to the court. Defendant-Petitioner acknowledges that these issues reflect a deficient performance rather than the types of criteria discussed in *Cronic*, but argues that they reach the level of a constructive denial of counsel when combined with Attorney Foley's conflict of personal pecuniary interest. The court is

uncertain that even that type of combination would fall within the scope of circumstances identified

by the Court in *Cronic*, but need not consider the matter further. As discussed above, the evidence

has not established that Attorney Foley had a conflict of interest at the time of Defendant-

Petitioner's sentencing.

C.  Ineffective Assistance of Counsel for Failure to Offer a Sentencing Defense

Finally, the court turns to Defendant-Petitioner's claim that Attorney Foley's objectively

deficient performance at sentencing was so prejudicial as to undermine the validity of the sentence

imposed by the court. Specifically, Defendant-Petitioner argues there is a reasonable probability that

had Attorney Foley obtained a psychological evaluation and offered it at sentencing, the court would

have imposed a lesser sentence. Defendant-Petitioner has argued that such a psychological

evaluation would have resulted in a finding that Defendant-Petitioner would have had a low risk of

recidivism, not that Defendant-Petitioner suffered mental health issues that prevented him from

understanding the illegality of his conduct towards the minor victim or participating in his defense.

He cites statements made by Judge Ponsor during the sentencing about petitioner's danger as a

persistent offender and argues a psychological evaluation would likely have established that he was at

low risk of reoffending and could probably be successfully supervised in the community.

The Supreme Court laid out the standard for evaluating such an argument in *Strickland v.*

*Washington*. 466 U.S. 668 (1984). As established in *Strickland*, a petitioner "must show that counsel's

performance was deficient" and "that the deficient performance prejudiced the defense." *Id.* at 687.

An attorney's performance is deficient only where there were errors "so serious as to deprive the

defendant" of a fair and reliable proceeding. *Id.* Thus, Defendant-Petitioner can only succeed with

this argument if the court concludes both that there was a deficient performance and that the

deficiency prejudiced the defense. With hindsight, it is clear that Attorney Foley's failure to obtain a

timely evaluation was a significant mistake, but that is not the proper vantage from which to judge

**G.Add.9**

his actions. In fact, "a fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight." *Id.* at 689. Without the benefit of hindsight, specifically the knowledge that Attorney Foley's continuance request would be denied, it is less clear that his performance was deficient. Defendant-Petitioner's argument raises some interesting questions about how to judge an attorney's tardy action when, depending on the outcome of a single discretionary decision by the court, the tardiness is rendered either a routine delay or an irrevocable mistake. Though these issues are interesting, they do not warrant the court's further attention because there is not a reasonable probability that the submission of a psychological evaluation of Defendant-Petitioner would have resulted in a lower sentence.

Judge Ponsor stated clearly that he based his sentence on "the course of conduct that [Defendant-Petitioner] engaged in and because of the rather sophomoric and pretentious and obliquely and carefully self-justifying little speech we just heard." (Sent'g Trans., Dkt. No. 99 at 90. While Attorney Foley would have been able to make a stronger argument regarding Defendant-Petitioner's low risk of recidivism he had obtained a psychological report before sentencing, generalized concerns about recidivism did not play a significant role in Judge Ponsor's sentencing decision. Such a report would have done nothing to change Defendant-Petitioner's conduct nor would it have prevented Defendant-Petitioner from delivering the statements he wished to deliver to the court; statements Attorney Foley had advised him against making, but could not prevent.

## IV.    CONCLUSION

For the foregoing reasons, Defendant-Petitioner's 2255 petition and motion to vacate (Dkt. No. 126) is denied.

It is So Ordered.

  /s/ Mark G. Mastroianni
MARK G. MASTROIANNI
United States District Judge

**G.Add.10**

| | | | |
|---|---|---|---|
| | 288 | 04/01/2021 | Judge Mark G. Mastroianni: ELECTRONIC ORDER denying 285 Motion Request for Amended or Additional Findings and 287 Motion for Reconsideration. The court grants 286 Motion for Certificate of Appealability. With respect to the Motion Request for Amended or Additional Findings, the interrogatory style of the filing goes beyond the scope of Fed. R. Civ. P. 52 and the court's ruling provides sufficient findings. The court, therefore, both denies the request for relief pursuant to Rule 52, but liberally construes the filing as a memorandum in support of the Motion for Reconsideration 287 . The court considered the documents in the record, heard Foley testify, and concluded the facts regarding any future appeal were too uncertain to create an actual financial conflict of interest in the months leading up to sentencing. The court also considered the facts of the underlying offense, the explanations provided by the sentencing judge at sentencing, and the recent evaluation of Defendant-Petitioner before determining that there was no reasonable probability that submission of a psychological evaluation would have shortened Petitioners sentence. The courts ruling 283 addressed its disagreement with theories urged by Defendant-Petitioner, including, issues related to the failure to obtain an evaluation, Attorney Foleys inability, under circumstances as they existed, to stop defendants elocution at sentencing, and the existence of an appellate conflict. The presence of an appellate waiver in the plea agreement was only one consideration among several that supported the courts conclusion that Foley did not have an actual financial conflict in the months leading up to the sentencing.Contrary to Defendant-Petitioner's argument, the court did not find that the plea agreement waiver section "foreclosed" an appeal, and thereby eradicated any expectation of an appellate fee, but rather, as the court explained, it was "unclear whether Defendant-Petitioner would be able to file an appeal, let alone that he would retain Attorney Foley for such an appeal." (Dkt. No. 283, 6.) The lack of definitive clarity about whether there will be grounds for an appeal and the impact of an appeal waiver, as noted by the court, is consistent with the Supreme Courts language in Garza v. Idaho, 139 S.Ct. 738, 744 (2019). In Garza, the Court explained that no waiver of appellate rights is absolute and that the filing of a notice of appeal is usually a ministerial act, often undertaken before a substantive assessment of available grounds for appeal. That a legally thorough analysis by Foley after sentencing would cast hope on survivable appellate options, including enforceability and validity or scope of the waiver, but also ineffective assistance, a ground that could hardly be pursued by him, is not evidence that he was counting on being retained to conduct the appeal. Having heard directly from Attorney Foley, the court was not persuaded that Attorney Foley engaged in such detailed analysis as part of a ploy to get an appellate fee. Petitioner has been given significant leeway, in terms of opportunity, time and resources, to develop his arguments. Though counsel has presented the arguments thoroughly, the court was not persuaded that a financial conflict existed or that any other basis for habeas relief is applicable in this case. Defendant-Petitioner's most recent arguments add nothing new that would cause the court to revisit its ruling. However, as it |

| | | | is possible that other reasonable jurists may view the facts differently, Petitioner's Motion for Certificate of Appealability 286 is allowed. (Zamorski, Michael) (Entered: 04/01/2021) |

**G.Add.12**